

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

September 9, 1999

The Honorable Patricia Gray
Chair, Public Health Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0109

Re: Whether a section 4B development corporation is subject to section 272.001 of the Local Government Code, and related questions (RQ-0045)

Dear Representative Gray:

You ask a number of questions about a development corporation established by a city under section 4B of the Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art. 5190.6 ("article 5190.6" or "the Act") (Vernon 1987 & Supp. 1999). You ask, for example, about the authority of a section 4B development corporation to sell real property and about the authority of the city to assist the development corporation. We conclude that a section 4B development corporation is not subject to section 272.001 of the Local Government Code, which establishes procedures political subdivisions must follow to sell land, but that a development corporation must ensure that it receives fair market value for any land, purchased with sales and use tax proceeds, that the development corporation sells for non-project purposes. We also conclude that although the Act prohibits the city from granting a development corporation public money or free services, the Act does not preclude a city from providing funds or services to a development corporation in exchange for consideration from the development corporation, within certain limitations.

We understand that your questions arise from 1997 and 1998 transactions involving the City of League City and a development corporation it created in 1994. In particular, it appears that the development corporation sold a parcel of land to an adjacent private business and that the city may have paid for certain operating expenses of the development corporation. We note that although article 5190.6 was amended in both 1997 and 1999, we do not believe that any of those changes in the law are relevant to the issues you raise.

First, you ask whether a section 4B development corporation is subject to laws and regulations governing political subdivisions. Given the factual background, we assume that you are concerned about section 272.001 of the Local Government Code, which provides notice and bidding requirements that political subdivisions must follow before selling real property. See TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon 1999 & Supp.). Section 272.001 is expressly applicable to land owned by "a political subdivision." Id. § 272.001(a) (Vernon Supp. 1999). Under the terms of article 5190.6, a section 4B development corporation is "not intended to be and shall not be a

political subdivision . . . within the meaning of . . . the laws of this state." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 22 (Vernon 1987). Therefore, we conclude that a section 4B corporation is not subject to section 272.001. *Accord* Tex. Att'y Gen. Op. No. JC-0032 (1999) (concluding on the basis of section 22 of article 5190.6 that a development corporation is not itself a political subdivision subject to the prevailing wage law, chapter 2258 of the Government Code). Consequently, a section 4B development corporation need not comply with the notice and bidding requirements set forth in section 272.001 of the Local Government Code.

Nevertheless, we do not believe that a 4B development corporation may sell property acquired with sales and use tax proceeds for less than the property's fair market value. A city that has established a section 4B development corporation may levy a sales and use tax for the benefit of the corporation only if the tax is approved by a majority of the voters. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(d) (Vernon Supp. 1999). The development corporation may use tax proceeds only to pay the costs of projects approved by the voters and to pay the principal of, interest, and other costs relating to bonds issued by the corporation to pay the costs of voter-approved projects. *See id.* § 4B(g). The Act's definition of the term "cost" includes the cost of the acquisition of land. *See id.* § 2(4). The Act also appears to authorize a section 4B development corporation to sell land acquired for a project that is no longer necessary for a project. *See id.* § 23(a) (giving development corporations the powers of a nonprofit corporation under article 1396-1.01 of the Revised Civil Statutes); art. 1396-2.02(A)(5) (authorizing nonprofit corporation to sell property). But because the Act devotes the use of sales and use tax proceeds to voter-approved projects, we believe when a section 4B development corporation sells property, acquired with sales and use tax proceeds, for non-project purposes, it must obtain fair market value for the property in order to ensure that sales and use tax proceeds are not diverted to purposes that have not been approved by the voters. *Cf. Troy Dodson Constr. Co., Inc. v. McClelland*, 993 F.2d 1211, 1216 (5th Cir. 1993) (proceeds of bonds approved by the electorate may only be expended for the purposes for which bonds were approved); *Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) (same); *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936) (same); *Black v. Strength*, 246 S.W. 79 (Tex. 1922) (same); *see generally* 60 TEX. JUR. 3D *Public Securities and Obligations* § 77 (1988); *see also* Tex. Att'y Gen. LO-97-061, at 5 n.11 (article 5190.6 does not authorize a development corporation to make donations of public funds).

With respect to land sales, you also ask whether a section 4B development corporation may sell land "without board approval or any public notice." Letter from Honorable Patricia Gray, State Representative, to Honorable John Cornyn, Attorney General (Mar. 18, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. We are not aware of any specific requirement that a section 4B development corporation provide public notice before selling land. As noted above, section 272.001 of the Local Government Code does not apply to an article 5190.6 development corporation. With regard to approval of a sale, we assume that when you ask about "board approval," you refer to the board of directors of the development corporation. A section 4B development corporation consists of seven directors appointed by the governing body of the city. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4B(c) (Vernon Supp. 1999). Because the powers of the corporation are vested in the board of directors, *see id.* § 11(a) (Vernon 1987), a section 4B

development corporation may not sell land without board approval. The board of directors of a development corporation is subject to the Open Meetings Act and therefore may not take final official action on a land sale except in an open meeting. *See id.* § 11(b) ("board of directors is subject to the open meetings act"); *see also* Tex. Att'y Gen. Op. No. JM-120 (1983) at 3-4 (concluding that section 11(b) of the Act effectively repealed section 14(c) which provides that "[a]ny action required by this Act to be taken at a meeting of the directors of a corporation or any action which may be taken at a meeting of the directors may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed by all of the directors. Such consent shall have the same force and effect as a unanimous vote."). The Open Meetings Act requires a board of directors to post advance notice of the subject matter of its meetings. *See* TEX. GOV'T CODE ANN. § 551.041 (Vernon 1994).

You ask two questions relating to support of a development corporation by the city that created it. Specifically, you ask whether a city may give money to a section 4B development corporation to cover the corporation's shortfalls or may pay the development corporation's creditors. You also ask if the city may extend city services, such as engineering or accounting, to a section 4B development corporation without reimbursement. Section 21 of the Act specifically prohibits a city that establishes a development corporation from lending its credit or granting any public money or thing of value in aid of the corporation. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 21 (Vernon Supp. 1999). We see no distinction between a city directly granting public money to a development corporation and paying the development corporation's creditors. With regard to whether services are a "thing of value," the phrase "grant public money or thing of value" in connection with limitations on use of public funds has long been understood to include provision of services and certainly had that meaning in 1979 when the legislature enacted article 5190.6 with this limitation. *See, e.g.,* Tex. Att'y Gen. Op. No. MW-89 (1979) (concluding that use of school personnel during working hours by professional organizations was grant of public money or thing of value within meaning of article III, sections 51 and 52 of the Texas Constitution).

It has been suggested that section 380.001 of the Local Government Code, which authorizes a city to establish and provide for economic development programs, including programs for making loans and grants of public money and providing personnel and services of the municipality, impliedly repeals the section 21 prohibition. We do not believe that it does. First, a prior opinion of this office concludes that section 380.001 does not authorize purely gratuitous transfers of public funds or resources. *See* Tex. Att'y Gen. Op. No. DM-185 (1992) at 4-5 (concluding that section 380.001 is enabling legislation for article III, section 52-a of the Texas Constitution but requires city to comply with article III, section 52); *see also* Tex. Att'y Gen. Op. No. JM-1255 (1990) at 8-9 (article III, section 52-a of the Texas Constitution clarifies that economic development is a public purpose but does not repeal requirements of article III, section 52). Furthermore, article 5190.6 governs the relationship between a city and its development corporation and the financing of development corporation projects in great detail. To the extent the two provisions may conflict, it is not apparent that the legislature intended the general authority granted in section 380.001 to prevail over the specific prohibition in section 21 of article 5190.6. *See* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998) (Code Construction Act) (special provision prevails as an exception to

the general provision unless the general provision is the later enactment and the manifest intent is that the general provision prevail).

Thus, in answer to your question, section 21 of article 5190.6 prohibits a city from giving money or services to a development corporation it has established. We note, however, that the Act does not preclude a city and development corporation from entering into a contract pursuant to which the city provides the development corporation with services in exchange for consideration from the development corporation. Nor does the Act preclude a city from providing funds to a development corporation in exchange for consideration from the development corporation, provided that the funding does not run afoul of the Act's limitations on funds that may be used to service a development corporation's debt. *See* discussion *infra* page 5.

Finally, you ask whether a section 4B development corporation may deed property to the city without compensation and, if so, whether the contract may include a reverter clause to deed the property back to the section 4B corporation to use for collateral for future projects through an "interlocal agreement." Request Letter at 2. This office does not review or construe specific contracts.[1] For this reason, we will address your question in general terms.

Your question appears to assume that a development corporation is a "local government" for purposes of chapter 791 of the Government Code, which authorizes interlocal cooperation contracts among local governments and between local governments and state agencies. That chapter applies to a "local government," which is defined to mean a "county, municipality, special district, or other political subdivision of this state." TEX. GOV'T CODE ANN. § 791.003(4) (Vernon 1994). "Political subdivision" is defined as "any corporate and political entity organized under state law." *Id.* § 791.003(5). Because article 5190.6 expressly provides that a development corporation is not a political subdivision for purposes of the laws of this state, however, we doubt whether chapter 791 applies to development corporations. Rather, we believe that the Act itself governs the authority of a development corporation to enter into a contract with a city.

Article 5190.6 gives a development corporation broad authority to contract with a project "user," a term that is expressly defined to include a city. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(14) (Vernon Supp. 1999). Section 23 of article 5190.6 expressly authorizes a development corporation "to lease to a *user* all or any part of any project for such rentals and upon such terms and conditions as its board of directors may deem advisable and not in conflict with the provisions of this Act," *id.* § 23(a)(2) (emphasis added), and "to sell by installment payments or otherwise and  convey all or any part of any project to a *user* for such purchase price and upon such terms and conditions as its board of directors may deem advisable and not in conflict with the provisions of this Act," *id.* § 23(a)(3) (emphasis added).

---

[1]*See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (contract interpretation beyond purview of this office); DM-383 (1996) at 2 (interpretation of contract not appropriate function for opinion process); DM-192 (1992) at 10 ("This office, in the exercise of its authority to issue legal opinions, does not construe contracts."); JM-697 (1987) at 6 ("review of contracts is not an appropriate function for the opinion process").

While these provisions authorize a development corporation to sell or lease a project to a city "upon such terms and conditions as its board of directors may deem advisable and not in conflict with the provisions of this Act," *id.,* other provisions of the Act limit this authority. For example, as noted above, article 5190.6 requires a section 4B development corporation to ensure that sales and use tax proceeds are used for voter-approved projects. *See id.* § 4B(d), (g). Thus, a development corporation may not lease or sell a sales and use tax-financed project to a city for non-project purposes. The Act also precludes a city from making gratuitous transfers of funds and other things of value to the development corporation. *See id.* § 21. For this reason, the city may not lease or purchase a project for a price that exceeds its value. In addition, bonds and other obligations of a development corporation payable from sales and use tax proceeds "may not be paid in whole or in part from any property taxes raised or to be raised by the eligible city," *id.* § 4B(h), and are payable only from funds provided by the Act and project revenues, *id.* § 22 (Vernon 1987); § 25(a), (e) (Vernon Supp. 1999). Therefore, a city purchasing or leasing a project from a development corporation may not agree to pay the debt service on bonds or other obligations issued to finance the project. The determination whether the terms of a particular transaction comport with these and other of the Act's limitations will depend upon the facts and is generally beyond the purview of this office.[2]

---

[2]*See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (investigation and resolution of fact questions cannot be done in opinion process); DM-383 (1996) at 2 (questions of fact are inappropriate for opinion process); DM-98 (1992) at 3 (questions of fact cannot be resolved in opinion process); H-56 (1973) at 3 (improper for Attorney General to pass judgment on matter that would be question for jury determination); M-187 (1968) at 3 (Attorney General cannot make factual findings).

## S U M M A R Y

A development corporation established under section 4B of article 5190.6 of the Revised Civil Statutes is not subject to section 272.001 of the Local Government Code, which establishes procedures political subdivisions must follow to sell land. However, a development corporation must ensure that it receives fair market value for any land, purchased with sales and use tax proceeds, that the development corporation sells for non-project purposes. Although article 5190.6 prohibits a city from granting a development corporation public money or free services, the Act does not preclude a city from providing funds or services to a development corporation in exchange for consideration from the development corporation, within certain limitations.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee